E9MZCHA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                    New York, N.Y.

4             v.                                 13 CR 290 (PAC)

5   CHRISTINA CHAI and HI JONG
    LEE,
6
                     Defendants.
7
    ------------------------------x
8

9                                                September 22, 2014
                                                 9:45 a.m.
10
    Before:
11
                        HON. PAUL A. CROTTY,
12
                                                 District Judge
13

14                          APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  ELISHA KOBRE
17       DANIEL TEHRANI
         Assistant United States Attorneys
18
    BRAFMAN & ASSOCIATES, P.C.
19       Attorneys for Defendant Chai
    BY:  MARC A. AGNIFILO
20       JACOB KAPLAN

21  SERCARZ & RIOPELLE
         Attorneys for Defendant Lee
22  BY:  ROLAND G. RIOPELLE
         GIULIANA GRAHAM
23
    Also Present:  Robert Polimeno, DEA
24                 Nicholas Evert, Paralegal
                   ARIEN GREENE-PINTO, Korean Interpreter
25                 KYCONG SILK SONG, Korean Interpreter

E9MZCHA

1           (In open court; jury not present)

2           THE DEPUTY CLERK:  All rise.

3           THE COURT:  Good morning.

4           MR. RIOPELLE:  Good morning, your Honor.

5           MR. AGNIFILO:  Good morning, your Honor.

6           THE COURT:  When we sent the -- please be seated.

7  When we sent the exhibits in on Friday afternoon, the jury had

8  already left and we did not place on the record that we were

9  sending the exhibits in.  And we did not have, when we talked

10 with the government, I guess neither Mr. Agnifilo nor Mr.

11 Riopelle were here to check on whether or not those were

12 appropriate exhibits to go in.

13          So before we send them in, I want to make sure that

14 everybody's seeing what's going in and everybody agrees that's

15 what is appropriate sending in

16          MR. RIOPELLE:  Thank you, your Honor.

17          MR. AGNIFILO:  Yeah, we -- I was here and it's fine.

18 The exhibits are fine.

19          THE COURT:  Mr. Riopelle?

20          MR. RIOPELLE:  I'll rely on Mr. Agnifilo, your Honor.

21          THE COURT:  Okay.

22          MR. AGNIFILO:  That's a mistake.

23          THE COURT:  Now, we're not sending in any videotapes

24 or -- just exhibits?

25          MR. KOBRE:  That's correct, your Honor.  I believe

E9MZCHA

1    there are a number of CDs, and some of them contain videos,

2    others contain actual documentary records.  And I suppose if

3    the jury wants to see any of those, we can deal with that at

4    that point.

5              THE COURT:  All right.  So, Marlon, you're going to

6    give that to the CSO?

7              THE DEPUTY CLERK:  Yes, your Honor.

8              THE COURT:  After Marlon takes that in, we're going to

9    report as to whether the jury is here.  I don't believe they're

10   here yet.  They're not all here yet.

11             THE DEPUTY CLERK:  Yes, they're all here.

12             THE COURT:  Okay.  The jury had a few questions about

13   lunches, but they're all here now, so they'll start their

14   deliberation.

15             Do we have your phone numbers where we can reach you?

16             MR. AGNIFILO:  Yes.

17             MR. RIOPELLE:  I believe so.

18             THE COURT:  Thank you very much.

19             MR. RIOPELLE:  Your Honor, one thing before you go.

20             THE COURT:  Yes, sir.

21             MR. RIOPELLE:  I spoke to Mr. Kobre today.  In the

22   what I think is the unlikely event that we're continuing to sit

23   through deliberations on Wednesday, Mr. Kobre and I both need

24   to leave a little early because of the Jewish day begins at

25   night and the holiday for Thursday begins on Wednesday evening.

E9MZCHA

1    This is something, you know, I learned very late in life.

2          THE COURT:  I already -- I appreciate the

3    clarification.  I knew you had to leave early.

4          MR. RIOPELLE:  Yeah.

5          THE COURT:  But I think we told the jury that.

6          MR. RIOPELLE:  We did, we did.

7          THE COURT:  So we'll certainly do it.

8          MR. RIOPELLE:  Okay.

9          THE COURT:  Now, what time do you have to leave, 4:00

10   o'clock, 3:00 o'clock?

11         MR. KOBRE:  Like 2:00 o'clock, Judge, if that would be

12   all right.

13         THE COURT:  2:00 o'clock?

14         MR. KOBRE:  It takes time to get -- you don't want to

15   be late.

16         MR. RIOPELLE:  He's got to go home and cook, Judge.

17   All Jewish holidays involve a lot of fat salty foods, so he has

18   to go home and cook.

19         MR. KOBRE:  I will not be the one cooking.

20         THE COURT:  It's not going to be a problem.  We'll

21   cross that bridge if we come to it.  We already told the jury

22   they can build in on this.  I don't know how many of them are

23   observers, but we told you, Mr. Riopelle, that you would, and

24   Mr. Kobre will, so.

25         MR. RIOPELLE:  Yes.

E9MZCHA

```
1              MR. KOBRE:  Thank you, Judge.

2              THE COURT:  It's not going to be a problem.

3              MR. RIOPELLE:  Thank you, Judge.

4              (Recess pending verdict)

5              (In open court; jury not present)

6              11:40 a.m.

7              THE DEPUTY CLERK:  All rise.

8              (Mr. Kobre not present)

9              THE COURT:  Good morning.  Please be seated.  Has

10    everybody seen the note?

11             MR. AGNIFILO:  I have.

12             MR. RIOPELLE:  Yes, Judge.

13             THE COURT:  All right.  What are your suggestions?

14    Maybe I should read the note into the record first, Bill.

15             We have a note from the jury received at 11:37 this

16    morning.  It's jury note number two.

17             First question, "Can you give us a more explicit

18    definition of intent?"

19             Second question, "Agent Polimeno's testimony."

20             Third question, "What exhibit is the DEA's 6, what is

21    the DEA-6 re Chai's statement, as well as his handwritten

22    notes?"

23             Let's take them up in order.  The first question, what

24    about intent?

25             MR. TEHRANI:  Your Honor, I would propose that they
```

E9MZCHA

1    just be directed to the portion of the instructions that

2    defines intent.

3              THE COURT:  Mr. Agnifilo.

4              MR. AGNIFILO:  I'm giving -- I obviously just got the

5    note.  I'm giving it some thought.

6              I'm just thinking through it.  I mean, I think

7    obviously they're asking for something -- and I'm not saying we

8    do it or don't do it, but they seem to be asking for something

9    that they don't already have.  Now whether we decide to give it

10   to them or not -- because they're saying they want a more

11   explicit definition.  Now they have the jury instructions so

12   they know what the definition is, and obviously they're caught

13   up on something related to intent and seem to want further

14   guidance.

15             I don't know if the Court's had this situation.  Some

16   judges have more explicit longer intent charges for occasions

17   like this, and some don't.  I don't know if your Honor has a

18   practice or preference.

19             THE COURT:  Mr. Riopelle?

20             MR. RIOPELLE:  Your Honor, I don't know as I stand

21   here how closely the Court's charge on intent in connection

22   with a conspiracy count mirrors the Sand instruction.

23             Your Court's charge was I thought a good brief direct

24   charge.  If the Sand instruction has different language or is a

25   little, a little more fulsome, then I would propose reading the

E9MZCHA

1    Sand charge to the jury since we know it's an approved charge

2    in this Circuit, and it may satisfy that question without

3    getting us into any trouble.  That's one alternative I can

4    think of quickly,.

5              THE COURT:  Well, I don't know whether my charge is or

6    is not based on Sand certainly.  I consulted Sand.

7              MR. RIOPELLE:  Yeah.

8              THE COURT:  And I think it's -- if it's not the Sand

9    charge, it's something very close.

10             MR. RIOPELLE:  Yeah.  Okay.

11             THE COURT:  I'll check.

12             MR. RIOPELLE:  I mean that's just a suggestion.

13             THE COURT:  I think my reaction is to point the jury

14   to the sections in the jury charge that deal with intent.

15             MR. RIOPELLE:  Very well, your Honor.

16             THE COURT:  I mean, maybe we can agree on that.  We

17   agree on what charge, what portions of the charge deal with

18   intent.  I think I charge them knowingly and intentionally with

19   respect to the conspiracy, and --

20             MR. RIOPELLE:  Yeah.

21             THE COURT:  And the count with respect to the second

22   count I say I've already defined them.

23             MR. RIOPELLE:  Yeah and willfully I think --

24             THE COURT:  I add willfully.

25             MR. RIOPELLE:  Yeah, willfully needs to be described

E9MZCHA

1     too because that's part of intent.

2              THE COURT:  That's not the question.  They asked about

3     intent.

4              Agent Polimeno's testimony.

5              MR. RIOPELLE:  I think it should be both direct and

6     the cross examination, your Honor.

7              MR. TEHRANI:  We agree on that.  I think we can work

8     on pulling it out and making sure we redact any sustained

9     objections, that kind of thing, side bars.  I don't think that

10    it's a controversial --

11             THE COURT:  The only question I would ask is do you

12    want the entire testimony.

13             How long is the entire testimony?

14             MR. TEHRANI:  Well, it was over the course of two

15    days.  Cross-examination continued on day two.  You know, I

16    think it's fairly lengthy, but they didn't suggest anything in

17    their note that would direct us to --

18             THE COURT:  I can ask them.

19             In what exhibit is the DEA-6 re chai statement as well

20    his handwritten notes.

21             MR. TEHRANI:  That's not in evidence.

22             THE COURT:  It's not in evidence.

23             MR. TEHRANI:  That's correct.

24             MR. AGNIFILO:  It's not in evidence.

25             THE COURT:  Okay.

E9MZCHA

1              MR. AGNIFILO:  Judge, just on -- it seems pretty clear

2     that I think they want his whole testimony.  I mean, they seem

3     to be pretty precise in their notes.  And if they wanted

4     something in particular, I think they would have asked, it

5     seems.

6              THE COURT:  Okay.  If you have your jury charge there,

7     what I would propose to do is point them to page 29 and page

8     35.

9              MR. AGNIFILO:  Would your Honor be directing them in

10    regard to the intentionally and knowingly defined from pages 29

11    to 31?

12             THE COURT:  Yes.

13             MR. AGNIFILO:  Okay.

14             THE COURT:  Not 31.  35.

15             MR. AGNIFILO:  No, no, but there's two and a half

16    pages.  I mean, my only concern with your Honor saying 29 is

17    the charge on this is from 29, 30 and ends on 31.  As long as

18    they know that's the whole, that whole charge is in context.

19    And then on page 35 --

20             MR. RIOPELLE:  Talking about the top of 35, I assume.

21             THE COURT:  Top of 35, correct.

22             MR. TEHRANI:  Which portion of 35, what?

23             THE COURT:  Second, Mr. Lee knowingly, willfully and

24    intentionally entered into the agreement.  I gave you

25    instructions on the elements of the conspiracy earlier in

E9MZCHA

1    describing the elements of count one.  I have also defined for

2    you knowingly and intentionally.  You are to apply those

3    instruction.  Then I add what was missing before that's

4    willfully.  That's on page 35, Mr. Tehrani.

5              MR. TEHRANI:  I don't think they're asking for

6    definition of willfully, your Honor.  I mean, they're asking

7    for intent in quotation marks, that define term of intent, not

8    intent more broadly.

9              MR. AGNIFILO:  Your Honor, one more question.  Is your

10   Honor inclined to give them -- remind them where it is in your

11   charge and then ask them if this satisfies them?

12             THE COURT:  No.

13             MR. AGNIFILO:  Or just leave it alone?  Leave it

14   alone.

15             THE COURT:  I'm going to tell them intentionally is

16   defined in my charge at pages 29 and following.  That's where

17   you should look.

18             MR. AGNIFILO:  Okay.

19             THE COURT:  Anybody want to tell me where the Sand

20   description of intent is?

21             MR. RIOPELLE:  I don't have the book with me, Judge,

22   but I'm sure it's there in the conspiracy instructions.

23             MR. TEHRANI:  Your Honor, I think offhand it's in

24   chapter three, but I'm not 100 percent sure.

25             THE COURT:  I'll start there, Mr. Tehrani.  Thank you.

E9MZCHA

1    Here's what Sand says, 384; government must prove beyond a

2    reasonable doubt that the defendant acted intentionally.

3    Before you could find the defendant acted intentionally, you

4    must be satisfied beyond a reasonable doubt the defendant acted

5    deliberately and purposefully, that is, defendant's act must

6    have been the product of defendant's conscious objective rather

7    than the product of conspiracy, mistake or accident.

8           An act is done knowingly and intentionally if it is

9    done deliberately, purposefully, that is, defendant's actions

10   must have been the product of his or her conscious objective,

11   not the product of a mistake, accident, negligence or some

12   other innocent reason.

13          MR. RIOPELLE:  Yeah, there is literally no difference.

14   There.

15          THE COURT:  There is no difference.

16          MR. RIOPELLE:  Okay.  Thank you, Judge.

17          THE COURT:  Now, do we have the testimony with respect

18   to Agent Polimeno?

19          MR. TEHRANI:  Your Honor, I'm going through it right

20   now striking out the objections, and then I'll share that with

21   defense counsel.

22          (Mr. Kobre present at this point)

23          MR. RIOPELLE:  Did your Honor send back a twister game

24   or something in the jury room?

25          THE COURT:  No.  They haven't had lunch yet.  I know

E9MZCHA

1    that.

2              MR. RIOPELLE:  Please don't serve any wine.

3              MR. AGNIFILO:  I wish I was like that before lunch.

4              THE COURT:  It's on the 17th.

5         If you go back to your seats and get out the jury

6    charge.

7              With respect to intent, I find the intent is defined

8    or referred to at pages 28, 29, 40, 41 and 44.  My intention

9    tension is to refer the jury to those pages in my jury charge.

10             MR. RIOPELLE:  That's agreeable to me, your Honor.

11             MR. AGNIFILO:  One second, Judge.  Can I have these

12   pages numbers one more time?

13             THE COURT:  28, 29, 30, 41, and 44.

14             MR. AGNIFILO:  Thank you.

15             THE COURT:  They all say pretty much what Sand says.

16             MR. AGNIFILO:  Your Honor, my only request is I

17   wouldn't want them to take -- since 29 is contextual, it's in

18   the context of a whole section that your Honor -- I wouldn't

19   want them to think they can't look at 30, 31, just because your

20   Honor said 29.

21             THE COURT:  I'm going to respond to the question, Mr.

22   Agnifilo.

23             MR. AGNIFILO:  No, no, I know.  But I think that since

24   there's one section here where it's intentionally knowingly

25   defined, my proposal is that you just say what you said, page

E9MZCHA

1    28, then 29 through 31 because it's all intent, it's all the

2    definition of intent, and then 40, 41, 44.

3            MR. KOBRE:  Your Honor, just to briefly respond to Mr.

4    Agnifilo.  I think we would agree with your Honor's proposal.

5    I think the other sections just don't relate to intent.

6            THE COURT:  Okay.  Are we all set to go now?

7            MR. AGNIFILO:  Not quite, your Honor.  We're still

8    going through the agent's testimony.  Maybe three minutes?

9            MR. TEHRANI:  Your Honor, just logistically.  Once

10   they've had an opportunity to review and w agreed on the

11   redactions, Mr. Evert could run downstairs and make the

12   redactions very quickly.

13           THE COURT:  Give them to the Court Reporter.  The

14   Court Reporter will read back the testimony.

15           MR. TEHRANI:  Okay.

16           THE COURT:  What was your intention, Mr. Tehrani?

17           MR. RIOPELLE:  Some judges send the physical copy of

18   it in there with the redaction and let the jury read it for

19   themselves.

20           THE COURT:  I intend to read it to them.  That's what

21   we told them we would do.

22           MR. RIOPELLE:  Very good.  Okay.  We're just marking

23   the places where there's colloquy and remarks and things like

24   that, so that the Court Reporter knows to skip over it.

25           THE COURT:  The court reporter's pretty knowledgable

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E9MZCHA

1     about these things.  I think he knows what to skip.

2              Marlon, call the jury in.

3              12:20 p.m.

4              (Jury entering)

5              THE COURT:  Good afternoon.  Please be seated.

6              We have your note.  Can you give us -- question, first

7     question is, "Can you give us a more explicit definition of

8     intent?"  And the short answer to that question is I can't go

9     beyond the definitions that I've already given you.  The word

10    intent is defined and discussed in my jury charge.  You have it

11    before you, pages 28 and 29, pages 40, 41 and 44.  That's the

12    definition of intent, and I refer you to those pages.

13             You should look around those pages too because

14    there's -- you can see how intent is defined and how it has to

15    be judged in context.

16             With respect to the third question, what exhibit is

17    the DEA-6 re Chai's statement as well as his handwritten notes.

18             There is no exhibit of Chai's statement, as well as

19    his handwritten notes.  And I assume by that you're referring

20    to Agent Polimeno.  He made notes as he testified that were not

21    received in evidence.

22             Second question is, Agent Polimeno's testimony, and

23    we're going to be -- he testified on the 16th and the 17th,

24    Wednesday and Thursday -- excuse me -- Tuesday and Wednesday

25    last week.

E9MZCHA

1           We'll now have the Court Reporter read back the
2   testimony of Agent Polimeno.
3           Bill.
4           (Record read)
5           THE COURT:  Ladies and gentlemen, your lunch has
6   arrived.  I think what we're going to do is take our luncheon
7   break and resume when we come back.  This will take about
8   another hour.
9           (Jury excused)
10          THE COURT:  We'll check back half hour, 45 minutes for
11  lunch, then we'll resume reading.
12          (Luncheon recess)
13          (In open court; defense counsel on the phone)
14          (Jury not present; government counsel present)
15          THE COURT:  Mr. Agnifilo?
16          MR. RIOPELLE:  No, this is Roland Riopelle.
17          THE COURT:  Okay.  This is Judge Crotty.
18          MR. RIOPELLE:  Hi, Judge, how are you?  I have Marc
19  with me right here.  Should I put him on speaker phone?
20          THE COURT:  Yes, please.
21          MR. RIOPELLE:  Okay.  Hold on.  Okay, Judge we're both
22  here.
23          MR. AGNIFILO:  Hi, your Honor.
24          THE COURT:  Okay.  I'm sorry to interrupt your lunch,
25  but I was looking at the transcripts of the Polimeno testimony.

E9MZCHA3

1          MR. RIOPELLE:  Yes.

2          THE COURT:  And I said it would take another hour.

3    I've since talked with Bill Richards, our Court Reporter.  It's

4    more like two or three hours, given the pages.

5          MR. RIOPELLE:  Okay.

6          THE COURT:  So what would you think about just taking

7    the transcript, editing out along lines you've already agreed

8    to, and giving the jury the transcripts with the instructions

9    that they should read the entire thing?

10         MR. AGNIFILO:  Your Honor, this is Marc.  My concern

11   is that we've now already read most of the Government's direct.

12   I don't know.  I would hate to do that, only because we've read

13   the Government's direct and I would hate to do the direct

14   without the cross.

15         MR. RIOPELLE:  My sense is that this is not a question

16   that focuses on my client, your Honor, so I would defer to Mr.

17   Agnifilo on this.

18         THE COURT:  Does government want to be heard?

19         You know, I really think, Mr. Agnifilo, I was guided

20   by your request that we not -- I think I really should have

21   asked the jury which particular portions, if any, of Agent

22   Polimeno's testimony they wanted.  But I'm looking at the

23   testimony of the 16th and the 17th, and it really is -- the

24   16th we have another 40 pages, and the 17th it's almost 80

25   pages.  We'll be all day long reading this stuff.

1          MR. AGNIFILO:  Right.

2          I suppose if your Honor wanted to ask -- it's not my

3     first choice, but I understand the time issue.  If your Honor

4     wants to ask the jury if there is anything particular they

5     wanted.  But my biggest concern is since we've already started

6     the direct, I hate to break it up.

7          Your Honor, I think I have to -- believe me I'm trying

8     to be mindful of the time, but I think my preference is if

9     we're going to start with the direct, we do the whole thing.

10          THE COURT:  All right.

11          Mr. Riopelle, you did some examination and Agent

12     Polimeno, I mean when he was recalled was for your benefit.  If

13     we send the -- we do the read backs, could we do the read backs

14     of Mr. Agnifilo and send in the balance, we'll send in the

15     transcript that would satisfy your needs and save some time?

16          MR. RIOPELLE:  I think that's agreeable to me, your

17     Honor.  Under the circumstances, my sense is that these

18     questions refer to Mr. Agnifilo's client.  So I'm willing to

19     send back the transcript related to our client.

20          THE COURT:  All right.  Okay.

21          MR. RIOPELLE:  That may save some time.

22          THE COURT:  Now, I take it since both of you are out

23     of town -- out of the courthouse in a restaurant, the

24     defendants are -- this is a legal only discussion.  Some of the

25     defendants are here, some of them are not here.

E9MZCHA3

1          MR. RIOPELLE:  Right, right.

2          MR. AGNIFILO:  Right.  We could put it on the record

3     when I get back, your Honor.  I'm happy to the waive the

4     appearance.  It's really a legal discussion.

5          THE COURT:  All right, thank you very much.  I'll see

6     you when you get back.

7          MR. AGNIFILO:  Thank you, your Honor.

8          MR. RIOPELLE:  Thank you, Judge.

9          (Recess)

10         (Resuming in open court; jury not present)

11         2:10 p.m.

12         THE COURT:  I thought we agreed we're going to resume

13    at quarter to?

14         MR. AGNIFILO:  I'm sorry if your Honor said --

15         THE COURT:  It's not certainly not later than 2:00

16    o'clock.

17         MR. AGNIFILO:  We meant to be back here at 2:00.

18    There was a little bit of a line downstairs, but Roland is on

19    his way in.

20         THE COURT:  From now I to suggest you stay in the

21    building.

22         MR. AGNIFILO:  That's fine, Judge.

23         THE COURT:  Call the jury.

24         THE DEPUTY CLERK:  Yes, sir.

25         (In open court)

E9MZCHA3

1           MR. RIOPELLE:

2           (Jury returning to the courtroom)

3           2:11 p.m.

4           THE COURT:  Please be seated.  We're going to finish

5     the reading of the direct examination of Agent Polimeno by the

6     government.  This is cross examination by Mr. Agnifilo, then

7     we're going to send in the transcript so you can read the

8     entire transcript if you wish.  Right now we'll resume at page

9     943, line 21.

10          (Record read)

11          (Jury retires to continue deliberations at 4:05 p.m.)

12          (In open court, jury not present)

13          THE COURT:  Okay.  Anything else?

14          MR. RIOPELLE:  No.

15          MR. AGNIFILO:  No, Judge.  Thank you.

16          (Recess pending verdict)

17          THE COURT:  We have the transcripts that have been

18    prepared with the redactions.  These consist of Agent

19    Polimeno's testimony.  There is six copies, one for every other

20    juror.  They'll have to share.  You've seen this, haven't you,

21    Mr. Agnifilo?

22          MR. AGNIFILO:  Yes.

23          MR. RIOPELLE:  Yes.

24          THE COURT:  You agree?

25          MR. RIOPELLE:  Yes.

E9MZCHA3

1          MR. AGNIFILO:  Yes.

2          THE COURT:  Mr. Riopelle?

3          MR. RIOPELLE:  Yes.  Thank you.

4          (Recess pending verdict)

5          (In open court, jury not present; government not

6  present)

7          5:30 p.m.

8          THE COURT:  We have a note.  Do you want to come up

9  and get it?

10          MR. AGNIFILO:  Sure.

11          THE COURT:  It says they want to go home.

12          MR. RIOPELLE:  Okay.  Well, are you going to let them

13  go?

14          THE COURT:  Yeah, sure.  Let my people go.

15          MR. RIOPELLE:  Said Moses.

16          THE COURT:  Said Moses.

17          I don't think we need the government for this.

18          MR. AGNIFILO:  I don't think so.

19          THE COURT:  Just wait till the government gets here.

20          THE DEPUTY CLERK:  You want the government to come up,

21  Judge?

22          THE COURT:  Yeah, I think -- I don't know -- we should

23  call everybody up so they're here.

24          Did you show the note to Mr. Riopelle?

25          MR. RIOPELLE:  Yeah, we it.

E9MZCHA3

1      MR. AGNIFILO:  We saw it.

2      THE COURT:  Do you want the government up or just tell

3   them --

4      MR. AGNIFILO:  I don't feel we need them up.  If they

5   just want to go at 5:30, that's okay.

6      THE COURT:  Did they leave, Marshal?

7      THE MARSHAL:  They left, yes, sir.

8      THE COURT:  Okay.  They're gone.

9      MR. RIOPELLE:  They're gone anyway.  Okay.

10      THE COURT:  Tell them we're adjourning for the day.

11      Okay, see you tomorrow morning at 9:30.

12      MR. AGNIFILO:  Thank you, your Honor.

13      MR. RIOPELLE:  Thank you, Judge.

14      THE COURT:  Wait a few minutes to let the jury clear

15   out.

16      MR. RIOPELLE:  Yes, we will.

17      MR. AGNIFILO:  Yes, sure.

18      (Adjourned to September 23, 2014 at 9:30 a.m.)

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300